Welcome everyone today. I'd like to welcome Judge Morris who's participating by video today from Montana and Judge Bybee who's also on the panel is not able to attend today but he is ready, prepared for argument, prepared on the cases. He'll listen to argument and then he'll participate in the decision-making. We want to welcome counsel who will be arguing virtually as well as those who are here in the courtroom and we just ask that during arguments you please watch your time, keep to the allocated time frames and try to summarize your argument as time is concluding. Let us know if you'd like to reserve any time for rebuttal. We'll go ahead and proceed with the oral argument calendar. Four cases have been submitted. Those are Batiste Vazquez v. Garland case number 16-70053, Pena Leyva v. Garland case number 17-72262, Navarro v. Menzies Aviation Inc. case number 21-15355 and Jess Solar Company v. Manatee Energy case number 21-16015. We have two cases scheduled for argument. The first case set for argument is Reyes Guzman v. Garland case number 17-70900 and that case is set for 10 minutes per side. Ms. Scott, if you want to proceed. Good morning. Thank you. Thank you, your honors. I may appease the court. My name is Jacqueline Brown Scott with the University of San Francisco School of Law Immigration Deportation Defense Clinic and I'm appearing on behalf of the petitioner, Alma Reyes Guzman pro bono. I will watch the clock and I hope to reserve approximately two minutes for rebuttal. I would like to begin by delving into the agency's past persecution analysis. This court should reverse the agency's flawed past persecution analysis and remand for reconsideration under the correct standard. First, the IJ failed to analyze all the facts presented to her concerning the past harm to the petitioner, which included being beaten by her former partner starting when she was 15 years old, lasting for at least two years. The petitioner included these facts in her declaration as well as in her testimony and the record contains corroborating evidence that describes how the petitioner had been beaten, something that was known to family and neighbors alike. Counsel, can you explain, I mean, first of all, how the IJ, as I recall, said that there did summarize some of the evidence and there was, is this a separate incident from whether she'd been beaten once or twice in another context? Are you, are you saying this is part of that same issue that the, that the IJ mentioned? Yes, the IJ did summarize some of the facts regarding the abuse from her partner. There's only one partner that abused her, according, you know, the petitioner testified about one partner. So it is the same event. And yes, the IJ did summarize the facts, but she didn't include them in her analysis of past persecution. But your argument for why it's not included is because she didn't, the IJ didn't mention two separate times of abuse specifically, just said she was abused, but didn't mention the two separate times. I'm not sure I understand the two separate times. I, she didn't, the IJ mentioned that the petitioner was beaten by her partner. So then why doesn't that include, why doesn't that include this incident that you're talking about? I think it's the same incident. What I'm arguing is that even though she just summarized the facts of the abuse, she didn't actually analyze them in terms of does that abuse rise to the level of past persecution. The only incidents she analyzed in terms of rising to the level of past persecution were the threats regarding her political party and then the death threat from Johnny Vargas. But she doesn't, she doesn't actually analyze the facts regarding the abuse of her partner, which is pretty much, it's one of her strongest claims. And then the agency, the BIA also never analyzed these facts and they were presented to them. They were on notice that there was an abusive relationship. And at this time, you know, it was after ARCG, the attorney general's opinion in 2014 of ARCG, this court's decision in Perdomo from 2009. But they're just, it's like a gaping hole in the analysis. There's nothing that talks about whether this harm rises to the level of past persecution, which sets up the whole case. Because if there's no analysis of past persecution, there can be no, on account of a protected ground, we can't get to step two. We're stuck in step one, which lacks an analysis of all the facts. Does that address your question, Your Honor? I think so. I didn't pick up on this argument as much in your brief. So I'm just trying to, I thought you were arguing that the political violence that was directed at her wasn't fully fleshed out. I had both arguments in the opening brief. The first is just regarding in terms of the claim of past persecution as an element that, you know, needs to be analyzed first. And then later, analyzing the actual domestic violence grounds. I do believe that the IJA committed two errors when she analyzed past persecution. One being what I just described, and then also regarding the other threats and the other harm that she didn't take into consideration, you know, all of the evidence in the record when she decided that that type of harm did not rise to the level of past persecution. But I do think that there are two errors regarding the past persecution analysis. Can I ask you about the political harm that's alleged? I mean, there's the threshold question of whether it's past persecution. But as to future persecution, your argument, as I understand it, is that the IJA and the BIA did not adequately consider some of the evidence, which I think is primarily the country reports. Is that accurate? Yes, I think that their agency didn't look, they didn't analyze any of the documentary evidence, the country reports. I mean, anything that was actually submitted concerning country conditions. But the IJA did say that she'd reviewed all of the information. So what makes you believe that she didn't review the country reports specifically? I think because of the way she dealt with the context of the harm. If she actually had considered the evidence, the country conditions evidence, she would have noted at least that this was a time period where Honduras was considered the country to have the highest murder rate in the world. And there's evidence in the record, the context matters in terms of objective fear of harm, as well as, you know, the idea was this death threat, something that could rise to the level of persecution, the context of the harm, as well as, you know, the neighborhood context, the petitioner was living next to the neighbor. But the past persecution, how does that separate from the past persecution? Because the past persecution, the IJA specifically said that that was a threat, that was an unfulfilled threat. It didn't rise to the level of torture. And then, and you don't seem to be addressing that issue in the petition. You're saying the risk of future, the threat of future persecution is still strong. And I guess your basis is, well, she was threatened once, and then there's this generalized violence in the country and the IJA didn't address the generalized violence. I don't think I'm just saying, well, I know I'm not just saying that it's future harm. I'm saying that she did air in her analysis of the past harm rising to the level of persecution. And separately, even if the court finds that, you know, the past harm did not rise to the harm, did not take into consideration all of the country conditions, evidence, not just the country reports, but everything that was submitted, showing that it is reasonable for this petitioner to fear being harmed again, due to the turmoil in the country, but also the murder rate and the fact that she's a woman, which goes back to my original point regarding past persecution. But if we ruled in your favor in this case, wouldn't we have to say that every IJA, at least in Honduras, has to consider the country conditions report for a woman who claims a fear of violence against her, just because it's a generalized claim, even if there wasn't a specific threat against her? I don't know that you have to say that. And I mean, in this case, there was a specific threat. So I don't think we need to reach that conclusion. She was not just threatened. She was also abused. So this is not just raising the idea that, oh, just because I'm a woman, I'm going to be persecuted. She did suffer past persecution, you know, so we don't need to make this giant conclusion that every single Honduran woman would need to go down that road. But, you know, country conditions evidence is corroborating evidence always. So if it is it should be considered by the IJA. That is part of the record. In any case, it shouldn't be discounted. I see that there's a minute and 15 seconds. I can save the rest for rebuttal if your honor has no more questions. Yeah. Mr. Moore. You're on mute, Mr. Moore. Apologies. It looks like I was muted there. Good morning, your honors. My name is Brendan Moore, and I represent the attorney general respondent. In this case, we're asking for the court to dismiss this petition for review because the decision is supported by substantial evidence, which is a highly deferential standard. Are you? Can I just add? You said dismiss. Do you mean deny? Or you think it's dismissed? No, I'm sorry. I meant to die. Okay. Okay. I just want to make sure I wasn't missing something. Okay, go ahead. First, the agency reasonably concluded that the harm petitioner suffered in Honduras did not rise to the level of persecution. Here, petitioner claims two distinct particular social groups, and they involve two separate distinct episodes of harm, although the affiliation with the national party may have been on multiple occasions. And regarding the national party first, you know, the petitioner here talks about performing voter outreach. And when they were doing this, she was working for the local mayor, and they were doing kind of a get out the vote. And during this get out the vote, the some people from the opposing party essentially kind of heckled the organizers, and they insulted them and made vague taunts. The taunts actually specifically, the record suggests petitioners testimony suggested they actually kind of concerned the followers of the organizers, not the organizers themselves. That petitioner says that the threat said that, you know, for those who follow you, we will have problems with them. And so that that kind of is the threat regarding that first PSG. And that conduct is unpleasant, certainly, but it does not amount to persecution. It's merely harassment. I thought the claim and maybe you're getting to this. The second one was the Vargas incident where Vargas pointed a gun at her, right? Correct. Okay. All right, go ahead and address that one. So the second episode was a death threat made by a man with a gun who held an erroneous belief that petitioner had reported him to police. Now, that was certainly serious. However, in light of the fact that this was the lone threat from Mr. Vargas, and petitioner never had another encounter with him again, I mean, the record actually shows that Mr. Vargas not only never threatened her, but did not go to her home, even though he knew where she lived. He never attempted to threaten the family, even though they lived in the same. Was there any indication that the Vargas threat was politically motivated? It seemed like it was totally a separate incident. Well, that was the thing. I mean, petitioner states that she believes that Mr. Vargas was Mr. Vargas was interested in Ms. Reyes-Guzman because of her affiliation with the National Party. In fact, as we know, it was actually attributable to an erroneous belief that she reported him to the police when in fact she had not. So these really are two distinct episodes, and the petitioner proposed two particularly wise social groups to address or to cover each episode of harm. Can I ask, I mean, do we need to decide the social group aspect? Because it seems to me that the question, the question here sort of hinges on whether the IJ had a duty to consider these country reports. And I'd be interested in your view on that. Because I mean, at what point does the IJ, does the duty to consider generalized evidence in country reports get triggered for the IJ? Sure. And first, I do think it's important and fair to note that the petitioner failed to raise this particular claim, and so therefore it was not exhausted before the agency. But getting on to the nature of your question more specifically, you know, the case law really reflects that what the court has said with the country reports and an agency's failure to properly consider them, they're really talking about evidence in the record of harm that goes to the group that is being discussed, you know, the group that the petitioner is involved in. And they also involve some discussion of the feared persecutor. So you have some type of addressing of the feared persecutor on the one hand, and the protected group on the other hand, and why that protected group is actually in danger based on the conditions of the country. That simply doesn't apply at all to either of the particular social groups that were proposed and accepted by the agency. Crime and gang violence and drug violence truly is generalized harm that applies to everybody living in Honduras, essentially. And it is not nearly particularized enough to the petitioner to suggest something was there. And I think that that is really the most important distinction. If there was relevant evidence that actually went to the PSG or to the feared persecutor, then, you know, there might be some onus on the agency to actually kind of parse that out. But really, what the petitioner is saying is that there's that burden regardless, they must parse out every claim, every argument that a petitioner makes. And there's just not support for that. In fact, the case law in this circuit has actually said, you know, specifically the opposite. So, I guess if that answers your question, I think one thing to note, additionally, is in the petitioner's own testimony. Can I ask, well, go ahead and finish up and then I'll ask one more question. I was just going to say, when she was asked why she feared returning to Honduras, she mentioned three things, the high crime, the economic situation, and that she was not able to look at Mr. Vargas. She doesn't mention the political affiliation claim at all. And again, you know, two out of the three things that she's talking about were these kind of general problems in Honduras, which are terribly unfortunate, but are not something that to the petitioner. And actually, her statement was actually very similar. It mentioned crime and poverty in Honduras as, you know, motivating reasons for her coming to the United States and for leaving Honduras. Counsel, isn't part of the claim here, though, that even though the government may not be the one inflicting any kind of threats against the petitioner, the government, including local officials, may acquiesce in the violence perpetrated against petitioner for a variety of reasons? I mean, I think that is the claim. But the act, you know, with respect to the torture claim, we're talking about a more likely than not that the petitioner would be tortured on return to Honduras. And the evidence does not at all discuss a serious threat of harm to either of the social groups that the petitioner was in. The petitioner was affiliated with the National Party. The National Party was actually in power for the last 12 years in Honduras. And in the reports that discuss some political harm and some threats and actual physical harm, even to political activists, actually, we're talking about coup opponents. And there is no evidence in the record whatsoever that the petitioner was a coup opponent. In fact, that wouldn't make sense based on the fact that the coup occurred in 2009, where Zelaya, who is the president, was overthrown. He was a member of the Liberal Party, the opposing party. So, I mean, there's nothing to suggest that Ms. Reyes-Guzman was a coup opponent. And so, therefore, the idea that she faces a more likely than not risk of torture is really just meritless. There are problems in the country. There are a lot of problems. They are of a generalized nature in this context. Can you briefly just address this idea that the IJ didn't appear to address the specific beating when she was 15 years old? I'm sorry. Your voice dropped just a little bit. The IJ didn't address that. The IJ counseled today was talking about the beating that she took from her domestic partner when she was 15. Can you address that and why? Did the IJ address that? Does it rise to the level of torture? Right. So, the IJ gave a very thorough discussion of the factual background and pretty much everything Ms. Reyes-Guzman testified to in terms of past harms. But at the end of the proceeding, counsel was asked, you know, what are the proposed social groups? And they mentioned two. The first was Honduran females associated with the national party. And the second one was Honduran females believed to have the claims that petitioner put forth. And so, therefore, that's why there is not either discussion in the IJ decision that goes, you know, more specifically into whether that rose to the level of persecution or in the agency, the board decision that followed that. And this is, again, I would return to the testimony that the IJ heard firsthand was when petitioner was asked, you know, what are you afraid of if you return to Honduras? And petitioner did not mention her abuser. This was something by that time. The petition is that the abuse when she was 15 would actually be waived in a way. She wouldn't have exhausted that. Exactly. She wouldn't have exhausted that. And, again, it's just another separate distinct episode. While tragic, it does not come into play for any sense of cumulative harm here. Okay. Thank you, counsel. Ms. Scott, you have a minute and a half for rebuttal. Thank you, honors. Just since we're still talking about the abuse, I'll take that back up and just mention it's not just today that I'm bringing this up. It is in the opening brief. And we're kind of conflating past harm and what she was afraid of when she left and why, you know, those are two different analyses. And we start always with past persecution. Was there past persecution? There were facts in this case showing that she did not just have one beating. She lived with somebody she described in her declaration in testimony, and she has corroborating evidence that talks about how she was beaten starting at the age of 15 for the years that she was with her partner. That is completely missing from any analysis at every stage of this case. So the fact that she might not have left for that reason, that goes to well-founded fear, but we didn't even get there. We're stuck on past persecution. There are facts that show that she was harmed, things that rise to the level of persecution. Regarding the country conditions evidence, that is always relevant. It's not just relevant for social groups. It's relevant for every element. You show that fear is reasonable. You show what government is or isn't doing. Counsel, I agree with you that they have to review that, but where the IJ said she did review it and you look at the country conditions report and you don't see anything specific other than just generalized, you know, statistics, do you, I mean, to what degree does the IJ have a duty to address these generalized statistics and say, well, that doesn't help her show a particularized harm? I think that in terms of the subjective and objective fear for well-founded fear, how do you show that someone's fear is objective? You do it because of what is going on in the country at that time. And that's why it is extremely relevant in this case, because this was a country that literally was considered the most, had the highest rate of homicide in the world for the few years that she, that all of this was happening. So that makes the threat more objectively reasonable than it would in a place where there's no crime say, you know, she needs to consider what is happening. There is case law that talks about turmoil in the country. And it's not just saying that everybody that lives in Honduras, that fears because it's a dangerous country that they are eligible for asylum. But in terms of this petitioner's objective fear, it shows that she, why she felt afraid that she's seeing neighbors being macheted to death in a time period where Honduras is the most dangerous country in the world. Okay. Thank you, counsel. Thank you to both counsel for your arguments today. The case is now submitted.
judges: BYBEE, NELSON, Morris